Saturday, March 12th, 1808, the Judges delivered their «pinions.
Judge Tucker.
James Micou by his will, which was proved on the 9th of August, 1781, bequeathed certain slaves to the children of Mungo Roy, whom he constituted his executor. In December, 1795, Mungo Roy advertised a sale of between twenty and thirty negroes at his plantation in Caroline county ; one-half of the purchase money o be paid down, and a credit for the balance till the next November, tire purchaser giving bond, &c. No no *74 tice of the title was taken in the advertisement. William Sale, the plaintiff, became the purchaser of the slaves bequeathed by James Micou, without notice (as he alleges in his bill) that the title was as abovementioned. After the purchase, being informed of this circumstance, at a distance of about eight months, he applied to Roy to deliver up his bond for half the purchase money, (havingpaid one-half down,) and proposed to him to take back the negroes, which Roy, on his part, refused3 Sale then brought a bill in the County Court to have back the money he had paid, and the bond which he had given, upon delivering to Roy the negroes purchased, or such of them as were alive. Roy in his answer insisted he had a right to sell, and did sell the negroes to assist in the payment of his testator’s debts ; but does not allege any deficiency of other personal assets. The Chancellor pronounced an opinion (the 'cause being brought before him by appeal) “ that an executor’s “ legal power to dispose of his testator’s goods, chattels, and credits is absolute. That the statute enacting that “ executors shall not sell the slaves of their testators, un less their other personal estate be not sufficient for pay- “ ment of debts, did not abridge the power of an execu- “ tor ; did only prohibit him' to exercise it, if the slaves were not requisite to supply deficiencies in other species “ of property, first subject to such demandsand dismissed the bill.
I pass over the other circumstances of the case as perfectly immaterial to the question upon which I do.ubt. For I am by no means prepared to yield my assent to the broad terms in which the Chancellor’s opinion is conceived. I can find no. law whatsoever in our code antecedent to the act of 1705, which pronounces the nature of the estate which a man might have in slopes. Being utterly unknown to the common law, we can derive no information upon the subr jeef from that source. The act above referred to, declared them in categorical terms to be real estate, and not chattels. The exceptions which followed in the act, created doubts respecting its true construction. It was explained by the act of 1727, the seventh section of which declares, *75 “ that no executor hath, or shall have, any power to sell “ or dispose of any slave or slaves of his testator or in-u testate, except for the payment of his just debts; and “ then only, where there is not sufficient of the personal es- “ tate to satisfy and pay such debts ; and, in that case, it “ shall and may be lawful for the executor or administrator “ to sell and dispose of such slave or slaves, as shall be “ sufficient to raise so much money as the personal estate “ falls short of the payment of the debts N This is a declaratory law, as is shewn as well by the preamble, as by the word hath, in this clause, and being on a subject where we have no guide but the will of the legislature, must be taken as they have thought proper to express it. it made slaves not general assets, but special assets only, to supply any deficiency in the personal estate, and so jealous was the legislature of the abuse of the authority vested in an executor or administrator by this act, that in the year 1748, they passed another act,(a) the 29th section of which is, word for word, as that before cited, except that itcxpressly requires the sale to be made at public auction. It is further to be observed, that the legislature at the same session, passed an act,(b) declaring slaves to be chattels personal in all cases. This act was refused the royal assent, and consequently never became a law ; but it shews the intention of the legislature to have been to restrain the power of an executor as to selling slaves, although they were willing that they should no longer be real estate. Would the Chancellor have pronounced the power of an executor over the slaves of his testator so absolute, (to use his own terms) as that a private sale of a slave, in “ disregard, even in contumacious disobedience to the pro- “ hibition,” not to sell except at public auction, would have been valid ? The doctrine contained in his decree seems to me to assert as much. But such a doctrine, I trust, will never receive the sanction of this Comí in the latitude in which it is expressed. In the present case, the sale made at public auction ; there is therefore no *76 . ground to impeach it, as contraiy to the prohibitions of the act. And even if it had been made in private, the purchaser could not rescind it, though the legatee would, not, I conceive, be bound by it: nor would he, perhaps, be bound by a public sale, if the purchaser had notice that -there were either no debts, or that there was other sufficient personal estate to discharge them : and this I find to be the doctrine of the Master of the Rolls, with respect to terms for years, in the case of Ewer v. Corbet, 2 P. Wms. 148. and which I think equally applicable to slaves in this country,, under the general provisions of our law, whether specifically bequeathed, or not. I am well aware that there are some general expressions in the opinions of the Court as delivered by the presiding Judge in the cases of Walden v. Payne, and Brock v. Philips,(a) which may seem contrary to tire principles I contend for.. But the point now under consideration,, was. not before the Court in. either of those cases ; and I hope it cannot be construed as a disrespect to the Court, to dissent from such general expressions, where they may be applied to cases not under their consideration at the time.
In the present case, the purchaser bought the slaves-upon the plantation of the defendant, where a number of others were exposed to sale, at public auction, without any notice of the nature of the sellers right thereto. He might very naturally suppose they were all (as a part are said to have been) his own property. The legatees were all probably present. One of them is proved to have been so. The sale was not forbidden. The purchaser then stands upon the ground of a fair purchaser without notice : nay more, of a purchaser buying with-the knowledge of those who' might claim tide, yet standing by, and not disclosing such-claim. Under such circumstances, the sale can never be impeached by them, whether justified by a deficiency of the personal estate, or not. The purchaser, then, is in no danger from that quarter. That being the case, there is no ground upon which to set aside the sale, for any thing *77 alleged in the bill. And it ccrtaiuly appears to me, that diere is no equity arising oat of the matter contained in the answer, which I think it would be rnlspetiduig time to notice further.
On these grounds, and not for those mentioned by che Chancellor in his opinion, I think the decree should be affirmed.
Judge Roane.
It k neither put in issue, nor proved, that the slaves in question were diseased at the time of the sale. The case, therefore, stands merely upon the general question whether the sale of a slave specifically bequeathed, and sold by an executor, at public sale, for the payment of debts due from the testator, can be annulled by the purchaser.
The case of Ewer v. Corbet, 2 P. Wms. 148. (followed, up by the other cases) is decisive to shew that the doctrine Is otherwise in relation to personal estate in general j and that an objection to the sale does not lie in the mouth of a purchaser, however it may be as to the legatee. In that case it tras said with great force, that it is not reasonable to put every purchaser of a lease (the case was that of a lease) from an executor, to take an account of the testator’s debts : and that,, if equity were otherwise, ic would lay an embargo on all personal estate in the hands of executors, which would be attended with great inconveniences : the bill of the specific legatee to recover the term sold by the executor was dismissed ; and, it was decided that the legatee bad no remedy but against the executor to recover the value of the legacy, in case there were sufficient other assets for the payment of debts. The-’ principle of this decision has been expressly extended to-slaves by the decisions of this Court. In the case of Walden v. Payne, 2 Flash. A it was declared (which, indeed, was before sufficiently evident) that slaves were clearly assets in the hands of an executor, and liable to the payment *78 of debts, &c. and, in the case of Brock v. Philips, 2 Wash. 68. the above doctrine was expressly recognised as applicable to slaves. It was there said that, although the principle caveat amptor applied to lands devised to be sold for the payment of debts, it ivas otherwise as to slaves and personal estate ; and that a purchaser of slaves sold at public auction by an executor, for the payment of debts, could not be disturbed. If this doctrine be correct, which I hold it undoubtedly to be, it follows, as a necessary consequence, that there is no pretence that the purchaser, on his part, can annul the sale.
If it be said that slaves are a kind of special assets, and only liable in the event of the deficiency of the other personal estate to pay the debts, the same may be said of other chattels specifically bequeathed ; but, as to them, the objection does not prevail. Goods specifically bequeathed are liable to a similar exemption, not only by the general principles of law, but by the particular provision of our act. I cannot, therefore, discriminate between slaves, and other goods, when specifically bequeathed.
On the ground, therefore, that the law on this point ought to be considered as settled, and settled on right principles, I am of opinion that the decree of the Chancellor is correct, and ought to be affirmed.
Judge Fleming.
It is admitted that an executor has no right * to sell a specific legacy for the payment of his testator’s debts, so long as he has in his hands other assets sufficient to discharge them : but whom does the law presume to be the proper judge of the circumstance ? The executor himself: and, therefore, if he sells a specific legacy, when there are . other assets sufficient to pay all the debts of his testator, I conceive it to be sound law that he and his securities are alone responsible to the legatee ; and the fair purchaser, for a valuable consideration, at a public sale, without notice, shall be quieted in his purchase. And, supposing the act of 1748, declaring that slaves shall *79 be sold for the payment of a testator’s or intestate’s debts, only where there is not sufficient other personal estate to pay and satisfy the same, to have been in force when the sale now under consideration was made, (which, however, is not admitted,) yet the sale, being a public one, would \tave been good, as to the fair purchaser without notice ; for the reason above stated.
The purchase of the negroes by the appellant was made at a public sale, on the 31st of December, 1795, part of the purchase money paid to Roy the executor, and a bond given for the balance, payable the November following. The appellant, finding he had made an improvident purchase, about seven or eight months after, offered to give up the negroes to Roy the executor, whom he required to return the money paid in part of the purchase, and to cancel the bond given for the balance ; under pretence of a defective title in the negroes : but there was not even a suggestion that they were unhealthy : and it is remarkable, that in his bill of injunction, filed fourteen months after the purchase, in which he prays relief against the judgment obtained on his bond, there is no complaint of the unsoundness of the negroes, or either of them : and if appears to have been an after-thought, and a feeble attempt to bolster up an unsustainable equity : and there is no evidence that either of the negroes had been unhealthy, or were so at the time of the sale.
Had the appellant conceived his purchase an advantageous one, we should, probably, have heard no complaint from him ; but he would have defended his title, if called in question, by the laws of the land.
It appears to me a very plain case, and I am for affirming the decree.

 Ed. 1769. c. 3.

 1748. c. 5. Ed. 1752.

 2 Wash. 7. & 70.